WILLIAM HOHLSTEIN, JR., by WILLIAM HOHLSTEIN, SR., His Guardian, v. ST. LOUIS ROOFING COMPANY and OCEAN ACCIDENT & GUARANTEE COMPANY, LTD., Appellants.—42 S. W. (2d) 573.

Division Two, October 1, 1931.

*Harold C. Ackert* and *Holland, Lashly & Donnell* for appellants.

*George A. McNulty* and *Oliver F. Erbs* for respondent.

FITZSIMMONS, C.—This is an appeal to the Supreme Court taken by the defendants, employer and insurer respectively, from a judgment of the Circuit Court of the City of St. Louis, affirming an award of the Workmen's Compensation Commission in favor of the guardian of the employee, William Hohlstein, Jr.

He was a roofer by trade and while he was working for the defendant St. Louis Roofing Company, he fell from a roof in St. Louis, on March 29, 1927. It was not disputed that he received serious permanent injuries to his arms and legs from the fall and that these injuries were by accident arising out of and in the course of his employment. The employer and insurer immediately started the payment of compensation at the rate of $20 a week, and such compensation has been paid regularly ever since. It is to be noted that the weekly installment is the largest authorized by the Compensation Act. Subsequently, a little over two years after the accident, on August 22, 1929, the parties informally appeared at the office of the Missouri Workmen's Compensation Commission in St. Louis, before one of the referees of the Commission, for the purpose of determining a "rating" for the various permanent partial disabilities suffered by Hohlstein, Jr. The question whether a state of insanity, which had come upon him, was caused or aggravated by the fall, was excluded from consideration at this conference by agreement. Pursuant to the conference before the referee, a "rating" for his injuries was duly made. The total compensation agreed upon amounted to 304.15 weeks at $20 per week, which rating for permanent partial disability suffered by the employee was satisfactory to all parties.

On or about November 13, 1929, the employee filed a formal claim for compensation with the Missouri Workmen's Compensation Commission, in which he claimed, in adddition to the permanent partial disability, as agreed upon at the conference, that he was entitled to compensation for total permanent disability, for the reason that the accident had resulted in permanent, incurable insanity. It was stated in the claim:

"Parties have agreed upon a settlement for all injuries other than insanity. This agreement has been approved by Referee Graff of your St. Louis office. Insurer, however, denies that employee's mental condition was proximately caused by the accident. This will be the only controverted question before the Commission."

The employer and insurer filed their answer to the claim denying all its allegations except that they admitted that the relation of employer and employee existed on March 29, 1927, the date of

the accident. Upon due notice the parties appeared before Referee Friedewald, one of the referees of the Workmen's Compensation Commission, on January 6, 1930, at which time the incompetency of William Hohlstein, Jr., was suggested (he previously having been adjudged a person of unsound mind by the Probate Court of the City of St. Louis), and thereupon William Hohlstein, Sr., his duly appointed guardian, was substituted as party claimant in the proceeding.

At the commencement of the hearing upon the claim for total disability before the referee, the parties stipulated of record that, at the time of the accident, employer and employee were operating under the Workmen's Compensation Act; that a rating of 304.15 weeks for permanent partial disability was made by the Commission on August 21, 1929, "and the only question to be determined by this hearing (namely upon the claim for total disability) is whether or not the mental condition is the result of this accident and whether or not there should be a total disability, and if not, the rating made on August 21, 1929, is agreeable to both parties." The parties then proceeded with the taking of testimony on the question whether or not the accident had caused or aggravated the employee's mental condition, it being admitted that at the time of the hearing the employee was a person of unsound mind.

The hearing was closed on January 28, 1930, which was its second day, and the referee made an award on February 8, 1930, for permanent partial disability in the sum of $20 per week for 304.15 weeks, beginning March 29, 1927, the date of the accident, subject to a credit of $2,960, which had been paid to the date of the award. The findings of fact by the referee state the total compensation for 304.15 weeks to be $6,083. In a statement of facts and rulings of law by the referee, filed with the award, he said that "considering the evidence, I am rather inclined to accept the belief that the accident did not aggravate his (employee's) mental condition." As to total permanant disability due to the physical injuries to the arms and legs of the employee, the referee in his statement said: "The evidence, I think, clearly eliminated this from consideration."

The claimant made timely application for a review by the full Commission of the award which had been made in its name by its referee. The application for review was received by the Commission at its office in Jefferson City on February 15, 1930, and the claim was taken as submitted on review on the same day. The Commission, on February 24, 1930, made a final award for total permanent disability in the sum of $20 per week for 300 weeks and thereafter the sum of $13.75 per week for life. The Commission filed with its award findings of fact, and a statement of facts and rulings of law. In the latter it expressed the opinion that, although the employee's

mind was previously affected, yet that the accident had aggravated his mental condition. It also expressed the belief in this statement that under the evidence the employee had suffered permanent total disability by reason of his physical injuries. Appellants devote much of their brief and argument to an attack upon the conclusion of the Commission respecting permanent total disability expressed in its statement of facts. For this reason we would give more space to the Commission's statement, but for the view which we take of the jurisdiction of this case. From the final award of the Commission upon review, defendants appealed to the circuit court, which, as said before, affirmed the award and granted an appeal to this court.

Upon the record the Commission took as submitted the application of the employee for a review of the "award, order or decision" of the referee, without notice to the parties and without further hearing or argument.

I. The first question to be decided in this case is whether this court has jurisdiction. This question has not been raised by either party, but it is the duty of this court to determine in each case whether it has jurisdiction of an appeal, although its jurisdiction is not challenged. [Stock v. Schloman (Mo. Sup.), 18 S. W. (2d) 428.] As the court of last resort, entrusted by the Constitution with a general superintending control over all inferior courts, the Supreme Court should be ever ready to disavow jurisdiction which has been thrust upon it, but which in truth belongs to another court.

II. Appellants, in their reply brief, answering the question which the court addressed to them at the argument, state that this court has jurisdiction, because (a) the amount in controversy is in excess of $7,500, and (b) there is involved and necessary for the determination of this case a constitutional question.

First, as to the amount in controversy. Section 5 of the Amendment of 1884 to Article VI of the Constitution provides that "the General Assembly shall have power by law . . . to increase or diminish the pecuniary limit of the jurisdiction of the Courts of Appeals." Under authority of this power, Section 1914, Revised Statutes 1929, provides that the various courts of appeals shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute exclusive of costs shall not exceed the sum of $7,500. In this case, the amount in dispute is not the sum of $20 per week payable from the date of the accident, March 29, 1927, for 304.15 weeks as the referee awarded and for 300 weeks as the Commission finally awarded. That sum and

the rating of 304.15 weeks the parties agreed upon and the Commission merely gave official sanction to their agreement. The last installment of the compensation at $20 per week will be due and payable in the month of January, 1933. The amount in dispute is the additional compensation which the Commission awarded upon review, namely $13.75 per week, for the rest of the life of William Hohlstein, Jr., after the expiration of 300 weeks from March 29, 1927, that is to say, beginning in January, 1933. Using as factors or terms the compensation of $20 per week for 300 weeks from March 29, 1927, and thereafter $13.75 per week during the rest of the life of William Hohlstein, Jr., also using the age of the employee and mortality tables, appellants in their reply brief calculate that the amount of the award upon review is $24,616.50. From this they deduct the undisputed sum of $6,000 for 300 weeks at $20 per week and they find "that the actual amount in controversy, based on the life expectancy of the employee, is $18,616.50." To this it may be answered that the record does not show the age of the injured employee. The American Experience Table, recognized by statute, long has been admissible in actions for negligent death to govern the expectancy of the life of decedent. [Boettger v. Iron Co., 136 Mo. 531, 38 S. W. 298; Collins v. Paper Mill Co., 143 Mo. App. 333, 127 S. W. 641.] Indeed the courts take judicial notice of the mortality tables to the extent that they may instruct the jury concerning them, even though they were not introduced in evidence. [Medley v. Parker-Russell Min. & Mfg. Co. (Mo. App.), 207 S. W. 887.] What materiality these tables would have had before the Workmen's Compensation Commission in a disability claim for a weekly award does not appear and scarcely can be fancied. It is enough to say that the Experience Table, as well as the age of the injured man, are not in the record made before the Commission. They are mentioned for the first time in appellants' reply brief, and we cannot take from that source any sort of notice of facts or figures necessary to determine a question of jurisdiction.

Concerning a certain letter to which respondent referred in his brief, appellants in their reply brief say:

"A complete positive answer to the suggestion that this letter constitutes notice is to call attention to the fact that the letter set out in respondent's brief does not appear in the abstract of the record or any supplemental or corrected abstract filed by respondent, and cannot therefore be considered by this court."

The same apt terse words may be said of the statements in appellants' reply brief about the employee's age, the mortality tables, and the resulting computations of the amount in dispute.

In many cases the amount in dispute is to be found in the prayer of the petition. The claim for permanent total disability in this

case thus states the amount in dispute: "Total value compensation claimed, $20 per week for 300 weeks and $15 per week for life." It being remembered that the item of $15 per week for life after 300 weeks is the only real amount in dispute as shown by other parts of the claim itself, the claim does not show that the amount in dispute exceeds $7500. In some cases the judgment appealed from aids the court in fixing the amount in dispute. Here the Commission, in its findings of fact upon review, under the caption "Compensation Due," states:

"22. Amount of compensation due: 300 weeks permanent total disability at $20 per week, $6,000; thereafter for life at $13.75 per week, unknown; total, unknown."

Since the item of $6,000, the only gross amount mentioned, is not in controversy between the parties, we must disregard it, and we have nothing left to show that the amount in dispute exceeds $7,500. But, appellants argue that this court has exercised jurisdiction in certain death cases under the Workmen's Compensation Act and therefore that it "would seem utterly absurd" for the court to deny jurisdiction in permanent total disability cases and in this case in particular. The absurdity does not follow, but rather it runs the other way. Section 3319, Revised Statutes 1929, makes it clear that, in a death case, the employer shall "pay to the total dependents of the employee *a single total death benefit*," to be determined on a basis of computation fixed by the statute. And "the death benefit provided for" shall be payable in installments. And in each of the cases cited, namely, Cassidy v. Eternit (Mo. Sup.), 32 S. W. (2d) 75; Wahlig v. Krenning-Schlapp Gro. Co. (Mo. Sup.), 29 S. W. (2d) 128; Dougherty v. Manhattan Rubber Co. (Mo. Sup.), 29 S. W. (2d) 126, the "single total death benefit," in dispute was in excess of $7,500. On the other hand Section 3316, Revised Statutes 1929, under which the Commission upon review made an award in this case, provides that: "For permanent total disability compensation shall be paid on the basis of 66⅔ per cent of the average earnings during 300 weeks and thereafter on the basis of 25 per cent of the average annual earnings for life, but not less than $6 nor more than $20 per week." Nothing in the last quoted statute gives the slightest basis for computing what may be called a "single permanent total disability benefit," approximating to the "single total death benefit" of the death statute. And, under Section 3318, Revised Statutes 1929, all payments of the unpaid unaccrued balance of the award in this case will cease when William Hohlstein, Jr., dies, even if death occurs before the expiration of the period of 300 weeks, for the record shows that he has no dependents. So far as this record shows the amount

in dispute does not exceed the sum of $7,500 and therefore this court is without jurisdiction upon pecuniary grounds.

III. Appellants argue that this court has jurisdiction because the case involves the construction of the Constitution of this State and of the United States. At the hearing upon appeal the trial court, as its judgment recites, examined and considered the transcript of testimony had before the Workmen's Compensation Commission, as by law it is limited and restricted. [Sec. 3342, R. S. 1929.] It refused fifteen declarations of law asked by appellants and affirmed the final award of the Commission. The construction which the trial court may have given to any of the sections of the Compensation Act must be gathered from its action in refusing appellants' declarations of law. Refused Declaration No. 1 reads: ''The court declares the law in this case to be *that the Commission acted without and in excess of its powers in making the award herein.*'' (Our italics.) Section 3342, Revised Statutes 1929, provides, among other things, that ''the court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: I. *That the commission acted without or in excess of its powers.*'' (Our italics.)

The declaration of law uses ''and.'' The statute uses ''or.'' Otherwise the declaration is a verbatim copy of the first statutory ground for reversal by the circuit court of an award by the Commission. Appellants in asking that this declaration be given cannot be said to have raised a constitutional question, and the trial court in refusing to give this declaration cannot be said to have passed on the constitutional question, which the motion for a new trial later sought to raise.

Refused Declaration No. 2 amplifies No. 1. It states in substance that the findings of fact made by the referee are binding upon the full Commission in the absence of a rehearing, and therefore that in this case the Commission by making a final award without a rehearing acted without and in excess of its authority and powers.

Section 43 of the Workmen's Compensation Act (now Sec. 3341, R. S. 1929) which is attacked by these and other declarations of law and by the motion for a new trial is as follows:

''If an application for review is made to the commission within ten days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, or, if deemed advisable, as soon as practicable hear the parties at issue, their representatives and witnesses and shall make an award and file same in like manner as specified in the foregoing section.''

Refused declaration of law No. 3 may be said to be more to the point in a constitutional and therefore in a jurisdictional sense: "The court declares the law in this case to be that if Section 43 of the Workmen's Compensation Act of Missouri is susceptible of the interpretation apparently placed upon it by the Compensation Commission in this case, to-wit, that the full Commission on review may ignore the findings of fact of the referee, set aside the award made by the referee and substitute in its place wholly new findings of fact and a wholly new award without granting to the parties a rehearing, or an opportunity to be heard before the full Commission, then such section (as so interpreted) is unconstitutional as being a violation of the Fourteenth Amendment of the Constitution of the United States and Section 30, Article II, of the Missouri Constitution."

Did the trial court, in refusing this declaration of law, thereby adopt that interpretation of the assailed statute which the declaration tentatively ascribes to the Workmen's Compensation Commission? Constitutions, State and Federal, are construed by courts and not by commissions or other quasi-judicial bodies. The Missouri Workmen's Compensation fills a long-felt want in the economic, social and humanistic life of the State. But, it is made up of three members, "one of whom shall be learned in the law," and at least one member "shall be a person who on account of his previous vocation, employment or affiliation shall be classified as a representative of employees," and one other by like standards "shall be classified as a representative of employers." A constitutional question could not be raised before the Commission, and the trial court with more reason may be said to have so ruled when it refused to give Declaration No. 3, rather than to have adopted the purported unconstitutional interpretation by the Commission of Section 43 of the Act. This Court ruled in Town of Kirkwood v. Meramec Highlands Co., 160 Mo. 111, 60 S. W. 1072, l. c. 1074.

"To confer upon the Supreme Court jurisdiction upon appeal from a circuit court upon the ground that a constitutional question is involved, it must affirmatively appear that the decision is necessary to the determination of the case, and that it was decided by the court below in violation of the Constitution, and adverse to the rights of the party who appeals. [Hulett v. Railway Co., 145 Mo. 35; Robert G. White Live Stock Commission Company v. Chicago, M. & St. Paul Ry. Co., 157 Mo. 518.]"

The foregoing rule has been repeated in the decisions of this court in cases too numerous to mention.

However, facing directly the question whether Declaration No. 3 presents a case involving the construction of the Constitution of the State or of the United States, we rule upon abundant authority

that it does not. The constitutionality of a statute cannot be raised by the contention that the statute, as "apparently interpreted" by the Workmen's Compensation Commission or as construed by the circuit court, is unconstitutional. The logical alternative of this contention is that the statute, as appellants would have it construed, is constitutional. And since all statutes must be construed in accordance with the Constitution, appellants are raising a question of statutory construction in the form of a question of constitutional construction. This court has uniformly refused to entertain jurisdiction grounded upon a so-called constitutional question raised in this manner. Some of the authorities are: Williams v. Short (Mo. Sup.), 263 S. W. 200; Dorrah v. Pemiscot County Bank (Mo. Sup.), 248 S. W. 960; Burns v. Prudential Insurance Co., 295 Mo. 680, 247 S. W. 159; Lavelle v. Metropolitan Life Insurance Co. (Mo. Sup.), 231 S. W. 616; Huckshold v. United Railways Co., 285 Mo. 497, 226 S. W. 852; Bealmer v. Hartford Fire Insurance Co., 281 Mo. 495, 220 S. W. 954; McManus v. Burrows, 280 Mo. 327, 217 S. W. 512; Garey v. Jackson (Mo. Sup.), 184 S. W. 979; Stegall v. American Pigment & Chemical Co., 263 Mo. 719, 173 S. W. 674.

Of this case we may aptly use the comments which this court made in Bealmer v. Hartford Fire Insurance Company, supra. The court said:

"It thus appears that it is not the validity of the statute but the validity of the trial court's construction of the statute, which is attacked on the grounds of unconstitutionality. Granting (without deciding) that the trial court's construction was wrong, and granting (also without deciding) that, as thus wrongly construed, that section would be unconstitutional, does that state of affairs so introduce a constitutional question into this case as to bestow upon this court a jurisdiction which it would not otherwise have? We do not think so. We have decided many times that it does not."

Appellants, in their motion for a new trial, ascribe to the circuit court the unconstitutional construction of Section 3341, Revised Statutes 1929, which in Declaration No. 3 they laid at the door of the Workmen's Compensation Commission. Of course the same answer may be made to that assignment of error as to the refused declaration of law, namely, that it does not raise a constitutional question and it does not confer jurisdiction.

Appellants in their motion for a new trial for the first time urge, without qualification based on the Commission's or trial court's construction, that Section 43 of the Compensation Act (Sec. 3341, R. S. 1929) "is unconstitutional in that it deprives defendants of due process of law as guaranteed under the Fourteenth Amendment to the Constitution of the United States, and Article II, Section 30, of the Constitution of the State of Missouri."

The rule is uniform that a constitutional question must be raised at the first opportunity and kept alive in the course of orderly procedure. In the nature of things there can be no fixed rule as to when or how or at what stage of the proceedings the question should be raised in each case. But the rule is well established that it is too late to raise a constitutional question in the motion for a new trial. There are exceptions, but they do not apply to this case. [Wabash Railroad Company v. Flannigan, 218 Mo. 566, 117 S. W. 722; Dubowsky v. Binggeli, 258 Mo. 197, 167 S. W. 999; Littlefield v. Littlefield, 272 Mo. 163, 197 S. W. 1057; Lohmeyer v. Cordage Co., 214 Mo. 685, 113 S. W. 1108; State v. Gamma, 215 Mo. 100, 114 S. W. 619; Hartzler v. Metropolitan Street Railway Co., 218 Mo. 562, 117 S. W. 1124; Howell v. Sherwood, 242 Mo. 513, 147 S. W. 810; Miller v. Connor, 250 Mo. 677, 157 S. W. 81.] But this tardiness aside, the assertion in the motion for a new trial that Section 3341, Revised Statutes 1929, is in violation of the constitutional provision specified, is a mere colorable appeal to the protection of the organic law. From the declarations of law, the motion for a new trial and the briefs, it is obvious that appellants rest their case on the grounds (first) that the Compensation Commission acted without and in excess of its powers in making the award, and (second) that the Commission and the Circuit Court by their construction of Section 3341, Revised Statutes 1929, caused an otherwise constitutional statute to offend against sacred provisions of the organic law. If these be errors against the substantial rights of appellants there is a court which has jurisdiction to afford a remedy. But the Supreme Court has no such jurisdiction in view of the amount in dispute.

IV. Appellants raise one other constitutional question in their declarations of law and in their motion for a new trial. It is thus stated in declaration of law No. 5:

"The Court declares the law in this case to be that Section 18-b of the Missouri Workmen's Compensation Act, in so far as it attempts to specify what evidence shall conclusively be presumed to be proof of the fact of total disability, is unconstitutional, in that it is clearly beyond the power of the Legislature to prescribe what shall be conclusive evidence of any fact."

Of this it may be said upon the authority of a long line of decisions that one who alleges that a statute is unconstitutional must point out the specific provision which the statute violates. General allegations will not raise the constitutional question or give this Court jurisdiction. [State v. Hale (Mo. Sup.), 248 S. W. 958; State v. Goad (Mo. Sup.), 246 S. W. 917; Excelsior Springs v. Ettenson, 188

Mo. 129, 86 S. W. 255; Hulett v. Railroad, 145 Mo. 35; 12 C. J. 785, sec. 216.]

It thus appearing that this court is without appellate jurisdiction, the cause is transferred to the St. Louis Court of Appeals. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.